IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JENNIFER LAWS,<br><br>　　　　　Plaintiff,<br>v.<br><br>STURM, RUGER & COMPANY, Inc.,<br>Serve:　C T Corporation System<br>　　　　　67 Burnside Avenue<br>　　　　　East Hartford, CT 06108-3408<br><br>　　　　　Defendant. | Case No. 23-cv-01030<br><br>***JURY TRIAL DEMANDED*** |

**PLAINTIFF'S CIVIL COMPLAINT FOR PERSONAL INJURY AND PUNITIVE DAMAGES**

COMES NOW Plaintiff JENNIFER LAWS, by and through her attorneys, Joshua Sather and J. Douglas Fields of Whitcomb, Selinsky, P.C., and states the following as her Civil Complaint for Personal Injury and Punitive Damages:

**INTRODUCTION**

1.　This case arises from a defective rifle manufactured by Sturm, Ruger, & Company, Inc. ("Defendant" or "Ruger") that unexpectedly fired and shot Plaintiff Jennifer Laws ("Plaintiff" or "Ms. Laws") in the right foot.

**PARTIES, JURISDICTION, AND VENUE**

2.　Ms. Laws is a resident of, and domiciled in, Silver City, New Mexico.

3.　Ruger is a for-profit corporation headquartered in Southport, Connecticut and incorporated in Delaware. Ruger conducts business in the State of New Mexico through the distribution of its products in the stream of commerce in New Mexico by way of more than 25 authorized Ruger retailers within New Mexico.

4.　This Court has personal jurisdiction over Ruger under New Mexico's long arm

1

statute, because Ruger's negligent acts regarding its research, development, design, assembly, manufacture, inspection, testing, marketing, sale, distribution, warranting, monitoring, and disseminating warnings in connection with a defective Ruger M77 Hawkeye, .243 bolt-action rifle caused injury within New Mexico and resulted in a tortious act committed within the State. N.M. Stat. § 38-1-16.

5. Ruger purposefully established contacts with New Mexico when it engaged in and derived profit from its business dealings in New Mexico through the marketing, distribution, and sale, of its products, including the Ruger M77 Hawkeye .243 bolt-action rifle, within the State.

6. Ruger purposefully availed itself of the privilege and benefits of conducting activity within New Mexico, including having purposefully availed itself of revenue from New Mexico by distributing and selling its products into the stream of commerce in New Mexico.

7. Ruger's negligent activities related to the research, development, design, assembly, manufacture, inspection, testing, marketing, sale, distribution, warranting, monitoring, and disseminating warnings in connection with a Ruger M77 Hawkeye, .243 bolt-action rifle caused serious personal injury in New Mexico.

8. Ruger's negligent acts caused injury in New Mexico as the events that are the subject of this Complaint occurred in Hidalgo County, New Mexico.

9. New Mexico has a clear interest in resolving claims arising from the harms suffered in New Mexico as the result of defective products sold or supplied by Ruger who profits from the sale of its products to New Mexico customers.

10. This Court's exercise of jurisdiction over Ruger does not violate Ruger's constitutional rights under the Due Process Clause.

11. This Court's exercise of jurisdiction over Ruger does not violate the traditional

notions of fair play and substantial justice.

12. It is no burden on Ruger to litigate this civil action in New Mexico.

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states.

14. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over any state law claims because they arise out of the same case or controversy as Ms. Laws' claims under 28 U.S.C. § 1332.

15. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Ms. Laws' claims occurred in this district.

## BACKGROUND

16. Ruger is one of the "nation's leading manufacturers of rugged, reliable firearms for the commercial sporting market" and "[f]or almost 75 years, Sturm, Ruger & Co., Inc. ("Defendant" or "Ruger") has been a model of corporate and community responsibility." *See* https://ruger.com (last accessed on November 9, 2023).

17. Ruger, through its employees and agents, manufactures, assembles, supplies, markets, distributes, and sells the Ruger M77 Hawkeye rifle.

18. The Ruger M77 Hawkeye is a bolt-action hunting rifle consisting of a "[n]on rotating, Mauser-type controlled round feed extractor" and "[t]hree position safety" that is "easily accessible and allows the shooter to lock the bolt or to load and unload the rifle with the safety engaged." *See* https://ruger.com (last accessed on November 9, 2023).

19. The M77 Hawkeye has been in production and sold in the United States market since sometime in 1968 and, upon information and belief, has been updated at various times since 1968.

20. One of those updates occurred sometime in or around 2006 when Ruger installed the "the smooth and crisp Ruger LC6 trigger for improved out-of-the-box trigger pull" on all M77 Hawkeye rifles. *See* https://www.ruger.com/news/2007-02-06.html (last accessed on November 13, 2023).

21. The three-position safety referenced in paragraph 18 "allows the shooter to lock the bolt to load and unload the rifle with the safety engaged" which means the safety selector mechanism may be placed in the fire, safe, or safe plus locked positions. *See* https://ruger.com/products/77Series/overview.html (last accessed on November 13, 2023).

22. Sometime in or around 2009, Ms. Laws' former spouse purchased (the "Purchase") a Ruger M77 Hawkeye .243 bolt-action rifle bearing serial number 710-88599 (the "Rifle") for their son, Adrian Melon.

23. On November 22, 2020, Ms. Laws and Mr. Melon traveled to Hidalgo County, New Mexico, specifically 23 miles North of the United States-Mexico border to hunt coyotes and mountain lions (the "Hunt").

24. To better access the animals' habitat, Ms. Laws and Mr. Melon traveled off-road using a Polaris General 4X4 utility vehicle (the "UTV")

25. At some point during the Hunt, Ms. Laws and Mr. Melon exited the UTV to continue their pursuit on foot.

26. While on foot, and approximately six miles from Highway 81, Ms. Laws and Mr. Melon encountered what they believed to be six unauthorized immigrants, two of which openly carried long guns.

27. Fearing for their safety, Ms. Laws and Mr. Melon retreated back to the UTV, Mr. Melon in the driver's seat and Ms. Laws in the passenger seat.

28. Prior to departure, Ms. Laws checked and confirmed that the Rifle's safety was fully engaged.

29. The Rifle's safety was fully engaged.

30. With the Rifle's safety fully engaged, Ms. Laws rested the Rifle between her legs with the muzzle facing down.

31. Ms. Laws then instructed Mr. Melon to drive directly to Highway 81 to find a U.S. Border Patrol station and report the unauthorized immigrants referenced in paragraph 26.

32. On the way to Highway 81, the General hit a small bump in the road and the Rifle fired.

33. Ms. Laws was struck in the right foot by the bullet fired from the Rifle.

34. Ms. Laws hands were nowhere near the trigger at the time the Rifle discharged.

35. Nothing inside the vehicle contacted, touched, or otherwise interacted with the Rifle's trigger or firing mechanism at the time the Rifle discharged.

36. When Ms. Laws and Mr. Melon reached Highway 81, Mr. Melon called 911.

37. The first responders to arrive on scene were three U.S. Border Patrol Agents, one of which was a medic, who immediately endeavored to treat Ms. Laws' gunshot wound.

38. Recognizing the emergency, one of the law enforcement officers called for a medical evacuation by helicopter.

39. An ambulance later arrived, and Ms. Laws was placed inside it to await the helicopter's arrival.

40. When the helicopter arrived, Ms. Laws was flown to the nearest trauma center in El Paso, Texas.

41. Ms. Laws endured more than one and a half hours of pain and suffering before

she finally reached the El Paso hospital.

42. Ms. Laws spent the next 69 days in the hospital, enduring 16 surgeries, skin grafts, bone grafts, and grueling physical therapy.

43. Because of persistent pain and problems with her right foot, in August 2023, Ms. Laws visited an orthopedic specialist (the "Orthopedist") at Texas Tech University Health Sciences Center in Lubbock, Texas.

44. On August 14, 2023, the Orthopedist explained that the bone grafts referenced in paragraph 42 had failed, and that amputation of the right foot from the midfoot to toe was necessary to save her right leg.

45. Ms. Laws is currently awaiting surgery to amputate her right foot.

46. At all relevant times, Ms. Laws was qualified and permitted to hunt game animals in the State of New Mexico.

47. At all relevant times, Ms. Laws was qualified and able to use firearms while hunting.

48. Upon information and belief, at no time since the Purchase have any substantial modifications, changes, or alterations been made to the Rifle.

49. Upon information and belief, at all relevant times, the Rifle had been cleaned and maintained to the standards and specifications set forth by the user manual which was written, approved, and issued by Ruger.

50. The Rifle unexpectedly and improperly discharged due to a defective safety mechanism and/or defective firing mechanism.

51. Ruger failed to properly design, test, manufacture, and/or assemble the Rifle which resulted in a defective safety mechanism and/or defective firing mechanism.

52. The defective Rifle caused the November 22, 2020, shooting of Ms. Laws.

## COUNT I – Negligence

53. All preceding paragraphs are incorporated by reference as if fully set forth herein.

54. Ruger researched, developed, designed, assembled, manufactured, inspected, tested, marketed, distributed, and warranted, the Rifle, including its safety and firing mechanism.

55. Ruger had a duty to use ordinary care in the research, development, design, assembly, manufacture, inspection, testing, marketing, sale, distribution, and warranting of the Rifle.

56. Ruger's duty to use ordinary care to avoid a foreseeable risk of injury continued after the defective Rifle left its possession, because it knew, or should have known, of a foreseeable risk of injury caused by a defect in the Rifle or in the manner in which it could be used, including hunting and transportation via off-road utility vehicle.

57. Ruger's duty of care increases with the severity of danger posed, and Ruger's duty was particularly high given the likelihood of death or serious bodily injury when a rifle unexpectedly and improperly discharges without the trigger being intentionally pulled and the firing mechanism being intentionally activated.

58. Ruger breached its duty of care when it failed to properly research, develop, design, assemble, manufacture, test, and inspect the Rifle, and ensure that it could not discharge when the safety was engaged, no intentional acts to activate the firing mechanism were taken, or when transported in an off-road utility vehicle.

59. As a direct and proximate result of Ruger's negligent acts and omissions referenced above, Ms. Laws suffered serious physical injuries to her right foot and leg, damages and losses including economic and noneconomic losses in the nature of physical and emotional

pain, suffering, mental anguish, inconvenience, and loss of enjoyment of life.

60. Accordingly, Ms. Laws seeks a judgment against Ruger as stated below.

## COUNT II – Strict Products Liability

61. All preceding paragraphs are incorporated by reference as if fully set forth herein.

62. Ruger researched, developed, designed, assembled, manufactured, inspected, tested, marketed, sold, distributed, warranted, monitored, and disseminated warnings in connection with the Rifle.

63. Ruger distributed and/or sold the Rifle with actual or constructive knowledge that it would be purchased and used by members of the general public, such as Ms. Laws, to engage in the pursuit of hunting.

64. The Rifle was expected to, and did reach Ms. Laws without undergoing any substantial modifications, changes, or alterations.

65. From the time the Rifle left the control of Ruger until the time of the November 22, 2020, shooting, upon information and belief, it did not undergo any substantial modifications, changes, or alterations.

66. At the time it was sold and distributed, the Rifle was defective in its design, manufacture, and/or warnings, and was unreasonably dangerous for its foreseeable use because:

    a. The Rifle improperly fired while the safety was fully engaged;

    b. The Rifle improperly fired during transport while Ms. Laws was hunting;

    c. The Rifle improperly fired during transport when the UTV hit a bump in the road;

    d. The Rifle improperly fired without action or interference with the trigger or other components of the firing mechanism;

    e. The Rifle was designed, manufactured, and/or assembled with a safety

      mechanism that failed to prevent unintentional and improper discharge;

   f.   The Rifle was designed, manufactured, and/or assembled with a firing mechanism that failed to prevent unintentional and improper discharge;

   g.   The Rifle was designed and sold in such a fashion that it failed to prevent unintentional and improper discharges during transport;

   h.   The Rifle was designed and sold in without undergoing adequate testing, analysis; surveys, or assessments to identify the unreasonable dangers described herein;

   i.   The Rifle was designed and sold in such a manner that it exposed Ms. Laws to unreasonable risk of harm during foreseeable use of the produce, including hunting and transportation; and

   j.   Such other particulars as the evidence may show.

67.   Ruger is strictly liable for the defective Rifle as it was defective and unreasonably dangerous for the following reasons:

   a.   Ruger knew or should have known that the Rifle was designed, manufactured, or assembled in such a manner that the safety mechanism would not prevent the Rifle from improperly and unexpectedly discharging while the safety was fully engaged.

   b.   Ruger knew or should have known that Rifle was designed, manufactured, or assembled in such a manner that the firing mechanism may cause the Rifle to improperly and unexpectedly discharge without interaction or interference with the trigger or other parts of the firing mechanism.

   c.   Ruger knew or should have known that Rifle was designed, manufactured, or assembled in such a manner that it may improperly and unexpectedly fire during

        transport.

    d. Ruger knew or should have known that the Rifle was designed, manufactured, or assembled in such a manner that it may improperly and unexpectedly fire during hunting related activities; and

    e. Such other particulars as the evidence may show.

68. The risk that the Rifle would unexpectedly and improperly fire with the safety fully engaged, without interference with the trigger or other components of the firing mechanism, during transport, and/or when the UTV hit a bump in the road while traveling to and/or from a hunting area, were not open and obvious risks, nor was it a risk that was a matter of common knowledge.

69. At all relevant times, Ms. Laws was unaware of the existence of defects in the Rifle.

70. The unreasonable danger associated with the foreseeable use of the Rifle exceeded those that an ordinary user or consumer would anticipate, and the risk of harm stemming from its manufacture could have been reduced or avoided had the Rifle's safety mechanism and/or firing mechanism operated correctly.

71. The unreasonable danger associated with the foreseeable use of the Rifle could have been reduced or avoided entirely by the use of alternative safety and/or firing mechanisms.

72. The unreasonable danger associated with the foreseeable use of the Rifle outweighs its utility, and the foreseeable risk of harm posed by it could have been reduced or avoided had Ruger appropriately designed, tested, manufactured, or assembled the Rifle.

73. As a direct and proximate result of the above-described defects, the Rifle improperly and unexpectedly discharged with the safety fully engaged, during transport, and shot

Ms. Laws in the right foot.

74. As a direct and proximate result of the above-described defects, Ms. Laws suffered serious physical injuries to her right foot and leg, damages and losses including economic and noneconomic losses in the nature of physical and emotional pain, suffering, mental anguish, inconvenience, loss of enjoyment of life, and permanent injury and disfigurement.

75. Accordingly, Ms. Laws seeks a judgment against Ruger as stated below.

## COUNT III – Breach of Implied Warranties

76. All preceding paragraphs are incorporated by reference as if fully set forth herein.

77. Ruger is a merchant with respect to the Rifle.

78. Ruger was/is a seller of the M77 Hawkeye rifle, including the Rifle at issue, and has thus impliedly warranted that the Rifle which it sold was fit for its ordinary and foreseeable purpose and for the particular purpose for which it was sold.

79. The Rifle was expected to, and did reach Ms. Laws without undergoing any substantial modifications, changes, or alterations.

80. From the time the Rifle left the control of Ruger until the time of the November 22, 2020, shooting, it did not undergo any substantial modifications, changes, or alterations.

81. Ms. Laws made ordinary and foreseeable use of the Rifle and relied upon the implied warranties given by Ruger.

82. Contrary to those implied warranties, at the time they were distributed and/or sold by Ruger, the Rifle was not fit for either its ordinary and foreseeable purpose, or the particular purpose for which it was sold, and was defective and unreasonably dangerous because:

   a. The Rifle improperly fired while the safety was fully engaged;

11

    b. The Rifle improperly fired during transport while Ms. Laws was hunting;

    c. The Rifle improperly fired during transport when the UTV hit a bump in the road;

    d. The Rifle improperly fired without action or interference with the trigger or other components of the firing mechanism;

    e. The Rifle was designed, manufactured, and/or assembled with a safety mechanism that failed to prevent unintentional and improper discharge;

    f. The Rifle was designed, manufactured, and/or assembled with a firing mechanism that failed to prevent unintentional and improper discharge;

    g. The Rifle was designed and sold in such a fashion that it failed to prevent unintentional and improper discharges during transport;

    h. The Rifle was designed and sold in without undergoing adequate testing, analysis; surveys, or assessments to identify the unreasonable dangers described herein;

    i. The Rifle was designed and sold in such a manner that it exposed Ms. Laws to unreasonable risk of harm during foreseeable use of the produce, including hunting and transportation; and

    j. Such other particulars as the evidence may show.

83. At the time the Rifle was distributed and/or sold by Ruger, it was not fit for either its ordinary and foreseeable purpose or the particular purpose for which it was sold because:

    a. Ruger knew or should have known that the Rifle was designed, manufactured, or assembled in such a manner that the safety mechanism would not prevent the Rifle from improperly and unexpectedly discharging while the safety was fully engaged.

    b. Ruger knew or should have known that Rifle was designed, manufactured, or

      assembled in such a manner that the firing mechanism may cause the Rifle to improperly and unexpectedly discharge without interaction or interference with the trigger or other parts of the firing mechanism.

    c. Ruger knew or should have known that Rifle was designed, manufactured, or assembled in such a manner that it may improperly and unexpectedly fire during transport.

    d. Ruger knew or should have known that the Rifle was designed, manufactured, or assembled in such a manner that it may improperly and unexpectedly fire during hunting related activities; and

    e. Such other particulars as the evidence may show.

84. At all relevant times, Ms. Laws was unaware of the existence of defects in the Rifle.

85. The unreasonable danger associated with the foreseeable use of the Rifle exceeded those that an ordinary user or consumer would anticipate, and the risk of harm stemming from its manufacture could have been reduced or avoided had the Rifle's safety mechanism and/or firing mechanism operated correctly.

86. The unreasonable danger associated with the foreseeable use of the Rifle could have been reduced or avoided entirely by the use of alternative safety and/or firing mechanisms.

87. The unreasonable danger associated with the foreseeable use of the Rifle outweighs its utility, and the foreseeable risk of harm posed by it could have been reduced or avoided had Ruger appropriately designed, tested, manufactured, or assembled the Rifle.

88. As a direct and proximate result of the above-described defects, the Rifle improperly and unexpectedly discharged with the safety fully engaged, during transport, and shot

Ms. Laws in the right foot.

89. As a direct and proximate result of the above-described defects, Ms. Laws suffered serious physical injuries to her right foot and leg, damages and losses including economic and noneconomic losses in the nature of physical and emotional pain, suffering, mental anguish, inconvenience, loss of enjoyment of life, and permanent injury and disfigurement.

90. Accordingly, Ms. Laws seeks a judgment against Ruger as stated below.

### COUNT IV – Punitive Damages

91. All preceding paragraphs are incorporated by reference as if fully set forth herein.

92. Ruger had a duty to refrain from willful and wanton acts, omissions, and/or misconduct which would foreseeably expose Ms. Laws to an unreasonable risk of harm and cause injury.

93. Upon information and belief, Ruger breached its duties and committed one or more of the following acts or omissions amounting to willful and wanton misconduct, in that it acted with reckless disregard for the health, safety, and well being of Ms. Laws by:

   a. Designing, manufacturing, assembling, distributing, and/or otherwise placing the Rifle, and other M77 Hawkeye rifles, into the stream of commerce which posed an unreasonable risk of unexpected and improper discharge due to a defective safety and/or firing mechanism;

   b. Designing, manufacturing, assembling, distributing, and/or otherwise placing the Rifle, and other M77 Hawkeye rifles, into the stream of commerce which posed an unreasonable risk of unexpected and improper discharge while in transport;

   c. Such other particulars as the evidence may show.

94. Upon information and belief, as a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions on the part of Ruger, Ms. Laws was exposed to the defective Rifle which unexpectedly and improperly discharged, resulting in the injuries and damages described herein.

95. An award of punitive damages is necessary and appropriate to punish Ruger for its willful, wanton, and/or intentional misconduct and reckless disregard for the health, safety, and well being of Ms. Laws, and other owners of the M77 Hawkeye rifle, and to deter Ruger and others similarly situated from engaging in similar misconduct in the future.

## PRAYER FOR RELIEF

96. WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiff's favor and against Defendants, and award all relief as allowed by law, including, but not limited to:

   a. Damages in an amount to be determined by a jury at trial as to Plaintiffs' allegations for Defendant's negligence;

   b. Damages in an amount to be determined by a jury at trial as to Plaintiffs' allegations for Defendant's defective product;

   c. Damages in an amount to be determined by a jury at trial as to Plaintiffs' allegations for Defendant's breach of implied warranty;

   d. Punitive damages in an amount to be determined by a jury at trial to halt Defendant's willful and wanton acts, omissions, and/or misconduct;

   e. For compensatory damages, including those for past and future pecuniary and nonpecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional and mental

impairment, and other non-pecuniary losses;

f.  For all costs, expenses, and attorney fees incurred by Plaintiff as allowed by any statute, rule, or provision;

g.  For pre- and post-judgment interest as permitted by law; and

h.  For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated: November 20, 2023

>Respectfully submitted,
>
>*/s/Joshua Sather*
>Joshua Sather, Esq.
>J. Douglas Fields, Esq. (Admission Application Pending)
>WHITCOMB, SELINSKY, P.C.
>2000 S. Colorado Boulevard
>Tower 1, Suite #9500
>Denver, CO 80222
>Tel: (303) 534-1949
>Fax: (303) 534-1949
>joshsather@whitcomblawpc.com
>doug@whitcomblawpc.com
>
>*Counsel for Jennifer Laws*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that, on the 20th day of November 2023, I filed the forgoing PLAINTIFF'S CIVIL COMPLAINT FOR PERSONAL INJURY AND PUNITIVE DAMAGES using CM/ECF which caused the following parties to be served by electronic means.

STURM, RUGER & COMPANY, Inc.,
CT Corporation System
67 Burnside Avenue
East Hartford, CT 06108-3408


                                        */s/Joshua Sather*
                                        Joshua Sather, Esq.
                                        J. Douglas Fields, Esq. (Admission Application Pending)
                                        Attorneys for Plaintiff Jennifer Laws